**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROBIN GRAHAM,
an individual,

                                 Case No.:

      Plaintiff,

v.

HUNTER WARFIELD, INC.,
a foreign for-profit corporation,
6720 OAKWOOD HOLDINGS, LLC,
d/b/a OAKWOOD SARASOTA,
a/k/a OAKWOOD APARTMENTS,
a foreign limited liability company,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

      Defendants.

_____/

## COMPLAINT

      **COMES NOW**, Plaintiff, ROBIN GRAHAM (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, HUNTER WARFIELD, INC. (hereinafter, "HW"), 6720 OAKWOOD HOLDINGS, LLC, d/b/a OAKWOOD SARASOTA, a/k/a OAKWOOD APARTMENTS ("Oakwood"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively with HW and Equifax, "Defendants"). In

1

support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for HW's violation of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein HW improperly credit-reported and subsequently verified objectively-inaccurate information related to an alleged consumer debt collection account on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union.

2.     Additionally, this is an action for damages for Equifax's violations of the FCRA wherein Equifax continued to incorrectly report such HW account with an erroneous balance owed despite Plaintiff's repeated disputes to Equifax.

3.     Further, this is an action for damages for Experian's violations of the FCRA wherein Experian received disputes from Plaintiff, yet Experian failed to process such disputes and/or failed to provide dispute results to Plaintiff.

4.     This is also an action for damages for HW's and Oakwood's violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, the "FCCPA"), wherein HW and Oakwood communicated with Plaintiff in an attempt to collect a consumer debt HW and Oakwood knew was not legitimately owed by Plaintiff.

5.     Finally, this is an action for damages brought by an individual consumer for HW's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein HW deceptively and unfairly attempted to

collect an alleged consumer debt from Plaintiff in an amount not owed by Plaintiff.

## JURISDICTION, VENUE & PARTIES

6.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code, Section 1681 *et seq*. and 15 United States Code, Section 1692 *et seq*.   The Court has authority to issue a declaratory judgment under 28 United States Code, Section 2201 and has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

7.     Defendants are subject to the jurisdiction of this Court, as HW, Oakwood, Equifax, and Experian each regularly transact business in this District.

8.     Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

9.     At all material times herein, Plaintiff is a natural person residing in Sarasota County, Florida.

10.    At all material times herein, HW is a foreign for-profit corporation existing under the laws of the state of Maryland with its principal place of business located at 4620 Woodland Corporate Boulevard, Tampa, Florida 33614.

11.    At all material times herein, Oakwood is a foreign limited liability company with its principal place of business located at 6673 Doonbeg Drive, Frisco, Texas 75078.

12.    At all material times herein, Equifax is a foreign limited liability

3

company existing under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

13.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCCPA AND FDCPA STATUTORY STRUCTURE

14.     The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

15.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.   15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

16.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

17.     For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of

4

any consumer debt.  *See* 15 U.S.C. §§ 1692(d)-(e).

18.    Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt in a manner that can be expected to harass or abuse the consumer debt and prohibits a person from attempting to collect a consumer debt that is known to be illegitimate.  *See* Fla. Stat. §§ 559.72 (7) and (9).

## FCRA STATUTORY STRUCTURE

19.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

20.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

21.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

5

22.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

23.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

24.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

25.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the

consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

26.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

27.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by the FCRA, FCCPA, and FDCPA because she is an individual and allegedly obligated to pay a debt.

28.     At all material times herein, HW, itself and through its subsidiaries, regularly services—and attempts to collect—alleged consumer debts account from consumer residing in Sarasota County, Florida and credit-reports information associated with the same.

29.     At all material times herein, Oakwood itself and through its subsidiaries, regularly extends residential leases to consumers residing in Sarasota County, Florida and attempts to collect alleged debts associated with the same.

30.     At all material times herein, HW and Oakwood are each a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *see also Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

31.     At all material times herein, HW is a "debt collector" as defined by the FCCPA, Section 559.55(7) and the FDCPA, Section 1692a(6).

32.     At all material times herein, HW is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

33.     At all material times herein, HW reports information concerning an alleged deficiency resulting from a residential lease agreement to Equifax and Experian, including but not limited to, a tradeline account related to an alleged debt originally owed to Oakwood, referenced by account number ending -2033 and/or -204. (hereinafter, the "Account" or "Alleged Debt").

34.     At all material times herein, HW attempts to collect the Alleged Debt from Plaintiff on Oakwood's behalf, and with Oakwood's consent, knowledge, and approval.

35.     At all material times here, HW acts as Oakwood's agent with respect to the Alleged Debt.

36.     At all material times herein, HW engages in a business, the purpose of which is the collection of consumer debts.

37.     At all material times herein, HW collects or attempts to collect—directly or indirectly—debts owed or due to another or asserted to be owed or due to another from consumers in Sarasota County, Florida.

38.     At all material times herein, the Alleged Debt is a consumer debt, incurred primarily for personal, household, or family use.

39.     At all material times herein, Defendants' conduct, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

40.     Specifically, at all material times herein, Defendants sent collection letters directly to Plaintiff in an attempt to collect the Alleged Debt.

41.     Further, at all material times herein, HW reports credit information (i.e., the Account) including a balance which is known or which should be known to be false.

42.     At all material times herein, HW furnishes incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union—continuing after Plaintiff's repeated disputes—despite Plaintiff not owing the balance reported by HW.

43.     HW furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

44.     At all material times herein, Equifax and Experian are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax and Experian each disburse such consumer reports to third

parties under contract for monetary compensation.

45.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

46.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## CREATION AND PAYMENT OF THE ALLEGED DEBT

47.     In or around June 2021, Plaintiff entered into a residential lease agreement with Oakwood to lease an apartment unit at Oakwood Sarasota in Sarasota, Florida (hereinafter, "Lease Agreement").

48.     Subsequently, Plaintiff defaulted on the Lease Agreement and Oakwood evicted Plaintiff from her apartment unit.

49.     As a result of Plaintiff defaulting on the Lease Agreement, she owed a balance to Oakwood (i.e., the Alleged Debt).

50.     More specifically, as of September 2022, Plaintiff owed the Alleged Debt to Oakwood in the alleged amount of $4,936.67, as shown on Plaintiff's initial move-out statement.

51.     Between April 2022 and March 2023, Plaintiff sought rental assistance funding through the Manatee County, Florida Emergency Rental Assistance Program.

52.     Eventually, and no later than March 2023, Plaintiff was approved for

rental assistance in the amount of $4,892.67.

53.     On or about March 24, 2023, Oakwood—or its servicer agent—received a payment on the Alleged Debt in the amount of $4,892.67.

54.     As such, as of March 24, 2023, Plaintiff no longer owed $4,936.67 on the Alleged Debt.

55.     At most, Plaintiff owed a remaining balance of $44.00 to Oakwood on the Alleged Debt.

56.     As of March 24, 2023, Oakwood knew that Plaintiff did not owe a balance of $4,936.67 because Oakwood received payment on the Alleged Debt in the amount of $4,892.67.

**OAKWOOD'S AND HW'S COMMUNICATIONS MADE IN AN ATTEMPT TO COLLECT THE ALLEGED DEBT**

57.     On or before August 31, 2023, Oakwood turned the Alleged Debt over to HW for collection from Plaintiff.

58.     When Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood advised HW that Oakwood received a payment of $4,892.67 on the Alleged Debt.

59.     Additionally, when Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood provided documents to HW which showed that Oakwood received a payment of $4,892.67 on the Alleged Debt.

60.     As such, as of August 31, 2023, HW received notice and possessed knowledge that Plaintiff did not owe $4,936.67 because Oakwood received a payment

on $4,892.67 on the Alleged Debt.

61.     Despite HW knowing that Plaintiff did not owe $4,936.67 on the Alleged Debt, HW sent a collection letter to Plaintiff dated August 31, 2023 wherein Defendants demanded a principal balance owed from Plaintiff on the Alleged Debt in the amount of $4,936.67 plus additional interest.

62.     HW sent the immediately-aforementioned letter to Plaintiff on Oakwood's behalf, and with Oakwood's consent, knowledge, and approval.

63.     As such, HW's collection letter dated August 31, 2023 constitutes an attempt by both HW and Oakwood to collect the Alleged Debt from Plaintiff.

## HW'S CREDIT REPORTING OF THE
## ACCOUNT TO EQUIFAX, EXPERIAN, AND TRANS UNION

64.     On or about September 7, 2023, Plaintiff obtained copies of her credit reports from Equifax, Experian, and Trans Union.

65.     Despite Oakwood receiving the payment of $4,892.67 on the Alleged Debt, HW reported a collection account (i.e., the Account) to Equifax, Experian, and Trans Union with an alleged balance due in excess of $5,000.00 as of September 2023.

66.     Such reporting is false and HW knew or should have known that Plaintiff owed no more than $44.00 on the Account.

## PLAINTIFF'S FIRST DISPUTE

67.     On or about September 27, 2023, and with the assistance of her attorneys, Plaintiff sent a letter to Equifax, Experian, and Trans Union disputing Defendants' credit reporting of the Account, advising that the Account should be reported with a

forty-four-dollar ($44.00) balance due *at most* and demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, "Plaintiff's First Dispute").

68.  Plaintiff's First Dispute provided sufficient information to allow Equifax, Experian, Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of her social security number, and her current address.

69.  Plaintiff also enclosed a copy of the move-out statement regarding the Alleged Debt/Account showing the payment of $4,892.67 and showing that Plaintiff may still owe $44.00 *at most* on the Account.

70.  Equifax and Experian received Plaintiff's First Dispute.

71.  Equifax communicated Plaintiff's First Dispute to HW, including all enclosed documents.

72.  HW received Plaintiff's First Dispute from Equifax.

73.  HW received copies of all documents enclosed with Plaintiff's First Dispute.

74.  On or about October 28, 2023, Trans Union sent a letter to Plaintiff in response to Plaintiff's First Dispute, wherein Trans Union advised that it deleted its reporting of the HW Account.

75.  On or about October 28, 2023, Equifax sent a letter to Plaintiff in response to Plaintiff's First Dispute with Equifax's dispute results.

76.  As such, Equifax was clearly able to identify Plaintiff's credit file based on the information provided in Plaintiff's First Dispute.

13

77.     Despite Plaintiff's First Dispute, Equifax's letter advised that HW and Equifax *still* reported the Account as "past due" in excess of $5,000.00.

78.     Plaintiff did not receive a response (i.e., dispute results) from Experian regarding Plaintiff's First Dispute.

## PLAINTIFF'S SECOND DISPUTE

79.     As of April 2024, Equifax, Experian, and HW were still reporting the Account inaccurately with an alleged past-due balance in excess of $5,000.00.

80.     On or about April 4, 2024, with the assistance of her attorneys, Plaintiff sent *another* letter to Equifax and Experian, *again* disputing Equifax's, Experian's, and HW's credit reporting of the Account, *again* advising that the Account should be reported with a $44.00 balance *at most*, and *again* demanding that Equifax, Experian, and HW investigate and update accordingly (hereinafter, "Plaintiff's Second Dispute").

81.     Plaintiff's Second Dispute *again* provided sufficient information to allow Equifax and Experian to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of her social security number, and her current address.

82.     With Plaintiff's Second Dispute, Plaintiff *again* enclosed a copy of the move-out statement regarding the Alleged Debt/Account showing the payment of $4,892.67 and showing that Plaintiff may still owe $44.00 *at most* on the Account.

83.     Plaintiff also enclosed Trans Union's results from Plaintiff's First Dispute showing that Trans Union deleted its reporting of the Account.

84. Equifax and Experian received Plaintiff's Second Dispute.

85. Equifax communicated Plaintiff's Second Dispute to HW, including all enclosed documents.

86. HW received Plaintiff's Second Dispute from Equifax.

87. HW received copies of all documents enclosed with Plaintiff's Second Dispute.

88. On or about April 14, 2024, Equifax sent a letter to Plaintiff regarding Plaintiff's Second Dispute.

89. Despite Plaintiff providing sufficient information to allow Equifax and Experian to identify Plaintiff's credit file—and despite Equifax identifying Plaintiff's credit file and processing Plaintiff's First Dispute based on the same name, date of birth, last four digits of her social security number, and  current address provided in both the First Dispute and Second Dispute—Equifax's letter asserts that Equifax was unable to locate Plaintiff's credit file and Equifax requested documents to corroborate Plaintiff's identity.

90. Equifax's failure to identify Plaintiff's credit file based on Plaintiff's Second Dispute is unreasonable and Equifax's failure to process Plaintiff's Second Dispute is unreasonable.

91. Yet again, Plaintiff did not receive a response from Experian regarding Plaintiff's Second Dispute.

### PLAINTIFF'S THIRD DISPUTE

92. As of June 2024, Equifax and HW were *still* reporting the Account

inaccurately with an alleged balance past-due in excess of $5,000.00.

93.     On or about June 13, 2024, with the assistance of her attorneys, Plaintiff sent *another* letter to Equifax and Experian, *again* disputing Equifax's, Experian's, and HW's credit reporting of the Account, *again* advising that the Account should be reported with a $44.00 balance *at most*, and *again* demanding that Equifax, Experian, and HW investigate and update accordingly (hereinafter, "Plaintiff's Third Dispute").

94.     Plaintiff's Third Dispute *again* provided sufficient information to allow Equifax and Experian to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of her social security number, and her current address.

95.     With Plaintiff's Third Dispute, Plaintiff *again* enclosed a copy of the move-out statement regarding the Alleged Debt/Account showing the payment of $4,892.67 and showing that Plaintiff may still owe $44.00 *at most* on the Account and *again* enclosed Trans Union's results from Plaintiff's First Dispute showing that Trans Union deleted its reporting of the Account.

96.     Further, Plaintiff enclosed copies of her Florida driver's license, social security card, and a utility bill showing Plaintiff's current address.

97.     Equifax and Experian received Plaintiff's Third Dispute.

98.     Yet again, Plaintiff did not receive a response from Experian regarding Plaintiff's Third Dispute.

99.     Plaintiff also did not receive a response from Equifax regarding Plaintiff's Third Dispute.

## DAMAGES

100.    As a result of HW's, Equifax's, and Experian's erroneous reporting of the Account including an inflated balance not owed by Plaintiff, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

101.    Following Plaintiff's First Dispute, Equifax and Experian each generated Plaintiff's credit reports containing the inaccurate past-due balance on the HW Account and published such credit reports to Plaintiff's current creditors and potential lenders.

102.    Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

103.    Plaintiff retained Swift Law PLLC and Gulfcoast Legal Services, Inc. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

104.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Equifax, Experian, and/or HW.

105.    United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, costs, and an award of attorneys' fees

to Plaintiff, should Plaintiff prevail in this matter against HW.

106.   As a result of Equifax's, Experian's, and HW's conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with an inflated and erroneous balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

107.   Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Oakwood receiving all but $44.00 allegedly owed on the Account, Plaintiff must simply endure Defendants' unlawful reporting of the Account and unlawful attempts to collect the Alleged Debt from Plaintiff.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to HW only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

108.   HW is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly

investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same (which included HW's <u>own</u> documents), and failing to request that Equifax and Experian correct the reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

109.    More specifically, as of September 2022, Plaintiff owed the Alleged Debt to Oakwood in the alleged amount of $4,936.67, as shown on Plaintiff's initial move-out statement.

110.    No later than March 2023, Plaintiff was approved for rental assistance in the amount of $4,892.67.

111.    On or about March 24, 2023, Oakwood—or its servicer agent—received a payment on the Alleged Debt in the amount of $4,892.67.

112.    As such, as of March 24, 2023, Plaintiff no longer owed $4,936.67 on the Alleged Debt.

113.    At most, Plaintiff owed a remaining balance of $44.00 to Oakwood on the Alleged Debt.

114.    On or before August 31, 2023, Oakwood turned the Alleged Debt over to HW for collection from Plaintiff.

115.    When Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood advised HW that Oakwood received a payment of $4,892.67 on the Alleged Debt.

116.    Additionally, when Oakwood turned the Alleged Debt over to HW for

collection from Plaintiff, Oakwood provided documents to HW which showed that Oakwood received a payment of $4,892.67 on the Alleged Debt.

117.    As such, as of August 31, 2023, HW received notice and possessed knowledge that Plaintiff did not owe $4,936.67 because Oakwood received a payment on $4,892.67 on the Alleged Debt.

118.    Despite Plaintiff owing a $44.00 balance on the Account *at most*, HW subsequently reported the Account to the national credit bureaus with an alleged past-due balance in excess of $5,000.00.

119.    Between September 2023 and July 2024, HW received notice of Plaintiff's First Dispute, Second Dispute, and Third Dispute from Equifax and/or Experian.

120.    Following Plaintiff's repeated disputes, HW falsely confirmed and/or verified its erroneous reporting to Equifax and Experian and HW continued to report the Account as past-due in excess of $5,000.00.

121.    HW's refusal to request that Equifax and Experian correct the collection Account balance was done intentionally, willfully, and/or knowingly as HW falsely verified its erroneous balance in response to repeated disputes from Plaintiff.

122.    HW's investigations/re-investigations were not conducted in good faith.

123.    HW's investigations/re-investigations were not conducted reasonably.

124.    HW's investigations/re-investigations were not conducted using all information reasonably available to HW.

125.    As a result of HW's conduct, actions, and inactions, Plaintiff suffered

damage to her credit reputation and credit worthiness, was denied credit applications, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of HW's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with a significant and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

126.   HW's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

127.   HW's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(7) AND (9)**
**(as to HW and Oakwood)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

128.   HW and Oakwood are both subject to, and each violated the provisions

21

of, Florida Statutes, Sections: 559.72(7) by collecting an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff; and 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimate or by asserting the existence of a legal right when Defendant knows that the right does not exist.

129.    Specifically, after Plaintiff's obtained rental assistance funding and after Oakwood received a payment on the Alleged Debt in the amount of $4,892.67, Plaintiff no longer owed $4,936.67 on the Alleged Debt.

130.    At most, Plaintiff owed a remaining balance of $44.00 to Oakwood on the Alleged Debt as of March 2023.

131.    On or before August 31, 2023, Oakwood turned the Alleged Debt over to HW for collection from Plaintiff.

132.    When Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood advised HW that Oakwood received a payment of $4,892.67 on the Alleged Debt.

133.    Additionally, when Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood provided documents to HW which showed that Oakwood received a payment of $4,892.67 on the Alleged Debt.

134.    As such, as of August 31, 2023, HW received notice and possessed knowledge that Plaintiff did not owe $4,936.67 because Oakwood received a payment on $4,892.67 on the Alleged Debt.

135.    Despite Plaintiff owing a $44.00 balance on the Account *at most*, HW

sent a collection letter to Plaintiff dated August 31, 2023 wherein HW and Oakwood demanded a principal balance owed from Plaintiff on the Alleged Debt in the amount of $4,936.67 plus additional interest.

136.   HW sent the immediately-aforementioned letter to Plaintiff on Oakwood's behalf, and with Oakwood's consent, knowledge, and approval.

137.   As such, HW's collection letter dated August 31, 2023 constitutes an attempt by both HW and Oakwood to collect the Alleged Debt from Plaintiff.

138.   HW and Oakwood sent its collection communications to Plaintiff in an attempt to abuse and harass Plaintiff into paying the Alleged Debt by leading Plaintiff to believe that despite Plaintiff not owing the Alleged Debt in the amount asserted by HW and Oakwood, HW and Oakwood could and would continue to communicate with Plaintiff in an attempt to collect the Alleged Debt unless and until Plaintiff made payment to Oakwood and/or HW on the Alleged Debt.

139.   In other words, HW's and Oakwood's conduct served no purpose other than to wrench payment from Plaintiff on a consumer debt Plaintiff does not owe.

140.   Oakwood's and HW's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

141.   Moreover, Oakwood and HW each knew that Plaintiff did not owe $4,936.67 on the Alleged Debt yet Oakwood's and HW's collection communication demanded over $5,000.00 from Plaintiff on the Alleged Debt.

142.    As such, Oakwood and HW communicated with Plaintiff in an attempt to collect an Alleged Debt known by Oakwood and HW to be illegitimate in violation of Florida Statutes, Section 559.72(9).

143.    As a direct and proximate result of Oakwood's and HW's action, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d**
**(as to HW Only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

144.    HW is subject to, and violated the provisions of, 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with its collection of the Alleged Debt.

145.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt balance asserted by HW.

146.    After Plaintiff's obtained rental assistance funding and after Oakwood received a payment on the Alleged Debt in the amount of $4,892.67, Plaintiff no longer owed $4,936.67 on the Alleged Debt.

147.    At most, Plaintiff owed a remaining balance of $44.00 to Oakwood on the Alleged Debt as of March 2023.

148.    On or before August 31, 2023, Oakwood turned the Alleged Debt over to HW for collection from Plaintiff.

149.   When Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood advised HW that Oakwood received a payment of $4,892.67 on the Alleged Debt.

150.   Additionally, when Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood provided documents to HW which showed that Oakwood received a payment of $4,892.67 on the Alleged Debt.

151.   As such, as of August 31, 2023, HW received notice and possessed knowledge that Plaintiff did not owe $4,936.67 because Oakwood received a payment on $4,892.67 on the Alleged Debt.

152.   Despite Plaintiff owing no more than $44.00 the Alleged Debt, HW sent *at least* one (1) collection letter to Plaintiff asserting a balance owed by Plaintiff in excess of $5,000.00 with respect to the Alleged Debt.

153.   HW's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite obtaining rental assistance and despite Oakwood receiving payment on the Alleged Debt in the amount of $4,892.67, HW could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

154.   As a direct and proximate result of HW's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1692e, e(2)(A), e(8), and e(10)**
**(as to HW only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

155.    HW is subject to, and violated the provisions of, 15 United States Code, Sections 1692e, e(2)(A), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

156.    Further, HW is subject to, and violated the provisions of, 15 United States Code, Section 1692e(8) by threatening to communicate or communicating to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

157.    More specifically, HW reported the Account with a false balance allegedly owed by Plaintiff.

158.    HW knew or should have known that Plaintiff did not owe a balance on the Alleged Debt in excess of $5,000.00 because HW received notice from Oakwood regarding the $4,892.67 payment Oakwood received on the Alleged Debt.

159.    Plaintiff disputed HW's reporting of the Account to Equifax and Experian, wherein Plaintiff advised that she owed $44.00 *at* most on the Alleged Debt because Oakwood received a payment of $4,892.67, and HW received Plaintiff's disputes via Equifax and/or Experian.

160.    Therefore, upon receiving Plaintiff's First Dispute via Equifax and/or Experian, HW certainly possessed knowledge that Plaintiff was not responsible for a

balance in excess of $5,000.00 on the Alleged Debt and HW possessed knowledge that HW's reporting of the Account on Plaintiff's Equifax and Experian reports was inaccurate and false.

161. Despite Plaintiff owing no more than $44.00 the Alleged Debt, HW sent *at least* one (1) collection letter to Plaintiff asserting a balance owed by Plaintiff in excess of $5,000.00 with respect to the Alleged Debt.

162. Despite HW possessing the immediately-aforementioned knowledge, HW "verified" its reporting of the Account to Equifax and/or Experian wherein HW communicated that Plaintiff was personally responsible for the balance owed on the Account in excess of $5,000.00.

163. Equifax communicated HW's credit reporting to Plaintiff via Equifax's dispute results.

164. Therefore, HW communicated credit information to Equifax and/or Experian concerning Plaintiff that HW knew was false or should have know was false.

165. As such, HW violated the FDCPA, Section 1692e(8).

166. HW's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to HW on the Alleged Debt or continue to endure HW's unlawful collection attempts and erroneous, derogatory credit reporting of the Alleged Debt.

167. As a direct and proximate result of HW's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**

**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f and f(1)**
**(as to HW Only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

168.   HW is subject to, and violated the provisions of, 15 United States Code, Section 1692f and f(1) by using unfair or unconscionable means in an attempt to collect the Alleged Debt and by attempting to collect an amount not expressly authorized by the agreement creating the Alleged Debt or permitted by law.

169.   Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt balance asserted by HW.

170.   After Plaintiff's obtained rental assistance funding and after Oakwood received a payment on the Alleged Debt in the amount of $4,892.67, Plaintiff no longer owed $4,936.67 on the Alleged Debt.

171.   At most, Plaintiff owed a remaining balance of $44.00 to Oakwood on the Alleged Debt as of March 2023.

172.   On or before August 31, 2023, Oakwood turned the Alleged Debt over to HW for collection from Plaintiff.

173.   When Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood advised HW that Oakwood received a payment of $4,892.67 on the Alleged Debt.

174.   Additionally, when Oakwood turned the Alleged Debt over to HW for collection from Plaintiff, Oakwood provided documents to HW which showed that

Oakwood received a payment of $4,892.67 on the Alleged Debt.

175.   As such, as of August 31, 2023, HW received notice and possessed knowledge that Plaintiff did not owe $4,936.67 because Oakwood received a payment on $4,892.67 on the Alleged Debt.

176.   Despite Plaintiff owing no more than $44.00 the Alleged Debt, HW sent *at least* one (1) collection letter to Plaintiff asserting a balance owed by Plaintiff in excess of $5,000.00 with respect to the Alleged Debt.

177.   As such, HW communicated with Plaintiff in an attempt to collect the Alleged Debt in an unfair and unconscionable manner, and communicated with Plaintiff in an attempt to collect an amount on the Alleged Debt that is not permitted by law.

178.   As a direct and proximate result of HW's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

### COUNT SIX:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (as to Equifax only)

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

179.   Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

180.   Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

181.   Despite Oakwood receiving all but $44.00 of the alleged balance owed on the HW Account and despite Plaintiff's repeated disputes providing written proof of the same to Equifax, Equifax continued to unlawfully report the Account with a balance owed in excess of $5,000.00 that was allegedly past due resulting in the Account being reported as a derogatory, negative, or adverse collection account.

182.   Such reporting of the HW Account is false and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

183.   The $4,936.67 balance was the full balance Plaintiff allegedly owed on the Account prior to Oakwood receiving $4,892.67 from the Sarasota County Rental Assistance Emergency Fund.

184.   As such, it is inaccurate and/or materially misleading to report that a balance owed in excess of $5,000.00 after Oakwood received the payment in March 2023.

185.   Between September 2023 and the date of this Complaint, Equifax generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading Account information.

186.   Overall, Equifax willfully and/or negligently failed to establish or follow

reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax credit reports and credit file.

187. As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional/further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax's derogatory and continued reporting of the Account and did not wish to further damage her credit scores with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with an inflated and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

188. Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

189. Equifax's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**
**(as to Equifax only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

190.   Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),   1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

191.   Specifically, Equifax willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

192.   For example, after receiving Plaintiff's First Dispute, Equifax failed to request any documents from HW and/or Oakwood and merely parroted information purportedly verified by HW.

193.   Despite Plaintiff's Second Dispute providing sufficient information to allow Equifax to identify Plaintiff's credit file—and despite Equifax identifying Plaintiff's credit file and processing Plaintiff's First Dispute based on the same name, date of birth, last four digits of her social security number, and  current address provided in both the First Dispute and Second Dispute—Equifax's response to

Plaintiff's Second Dispute asserted that Equifax was unable to locate Plaintiff's credit file and Equifax requested documents to corroborate Plaintiff's identity.

194.   Equifax's failure to identify Plaintiff's credit file based on Plaintiff's Second Dispute is unreasonable and Equifax's failure to process Plaintiff's Second Dispute is unreasonable.

195.   Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's several disputes, Equifax solely relied on HW's blanket and parroted assertions that HW and Equifax were entitled to report the Account with a falsely inflated past-due balance.

196.   Equifax's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

197.   As such, Equifax's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit file.

198.   Such reporting is false and evidences Equifax's failure to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

199.   Equifax's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

200.   Equifax's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by HW.

201.   Equifax's investigation/reinvestigations of Plaintiff's disputes were not

conducted in good faith.

202.   Equifax's investigation/reinvestigation procedures are unreasonable.

203.   Equifax's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax.

204.   Equifax's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's reinvestigations of Plaintiff's disputes and the Account.

205.   As a result of Equifax's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional/further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax's derogatory and continued reporting of the Account and did not wish to further damage her credit scores with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with an inflated and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

206.   Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

207.   Equifax's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT EIGHT:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTION 1681i(a)(6)**
**(as to Experian only)**

Plaintiff re-alleges paragraphs one (1) through one hundred seven (107) as if fully restated herein and further states as follows:

208.   Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681ia(6) by failing to provide Plaintiff written notice of results of a reinvestigation not later than five (5) business days after the completion of the reinvestigation.

209.   Specifically, Experian received Plaintiff's First Dispute, Plaintiff's Second Dispute, and Plaintiff's Third Dispute.

210.   Despite Experian receiving no less than three (3) written dispute letters from Plaintiff regarding HW's reporting of the Account with an inaccurate balance allegedly owed, Experian did not send any responses (i.e., dispute results) to Plaintiff and Plaintiff did not receive any dispute results from Experian regarding Plaintiff's First Dispute, Plaintiff's Second Dispute, or Plaintiff's Third Dispute.

211.   Overall, Experian willfully and/or negligently failed to send dispute results to Plaintiff regarding her repeated disputes in violation of 15 United States Code, Section 1681i(a)(6).

212.   As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional/further credit applications as she believed she would not be able to

obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Account and did not wish to further damage her credit scores with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with an inflated and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

213.   Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

214.   Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment against HW, Equifax, and Experian for maximum statutory damages for violations of the FCRA;

b.   Judgment against HW and Oakwood declaring that HW and Oakwood violated the FCCPA;

c.   Judgment against HW and Oakwood for maximum statutory

damages for violations of the FCCPA;

      d.    Judgment against HW for maximum statutory damages for violations of the FDCPA;

      e.    Actual damages in an amount to be determined at trial;

      f.    Compensatory damages in an amount to be determined at trial;

      g.    Punitive damages in an amount to be determined at trial;

      h.    An award of attorney's fees and costs; and

      i.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, ROBIN GRAHAM, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

          Respectfully submitted,

          **SWIFT LAW PLLC**

          */s/ Aaron M. Swift*
          **Aaron M. Swift, Esq., FBN 0093088**
          Jordan T. Isringhaus, Esq., FBN 0091487

Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

*~and~*

## GULFCOAST LEGAL SERVICES, INC.

/s/ *Sara M. Jones*
**Sara M. Jones, Esq., FBN 1015334**
1101 Tamiami Trail S., Suite 207
Venice, FL 34285
Phone: (941) 746-6151 ext. 272
Fax: (727) 231-0935
saraj@gulfcoastlegal.org
*Co-counsel for Plaintiff*